IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHARLES H.**, | : |
| Plaintiff, | : |
| v. | : |
| | : NO. 24-684 |
| **LELAND DUDEK**, | : |
| *Acting Commissioner of Social Security* | : |
| | : |
| Defendant. | : |
| | : |

**O P I N I O N**

SCOTT W. REID                                                                                          DATE: April 9, 2025
UNITED STATES MAGISTRATE JUDGE

Charles H. brought this action under 42 U.S.C. §405(g) to obtain review of the decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB"). He has filed a Request for Review to which the Commissioner has responded. As explained below, I conclude that the Request for Review is denied.

I.          *Factual and Procedural Background*

Charles H. was born on November 9, 1966. Record at 233. He completed high school. Record at 238. He has a history of work as a diesel mechanic and as a stagehand. Record at 238. At the time of his hearing, he was not working. Record at 58. On January 7, 2020, Charles H. completed an application for DIB, alleging disability since August 5, 2019, on the basis of his plantar fasciitis, arthritis, diverticulitis, hypertension, anxiety, bipolar depression, hernias, torn left and right labrum, pinched nerve in the neck, and heart disease. Record at 213, 237.

1

Charles H.'s application for benefits was denied on August 5, 2020. Record at 117. It was denied again on April 30, 2021, upon reconsideration. Record at 132-42. Charles H then requested a hearing before an Administrative Law Judge ("ALJ"). Record at 144.

A hearing was held in this case on November 19, 2021. Record at 53. At the hearing, Charles H. amended the alleged onset date of disability to January 1, 2020. Record at 24. On February 18, 2022, the ALJ issued a decision finding that between January 1, 2020 and November 7, 2021, Charles H. was not disabled. Record at 21-52. Beginning on November 8, 2021, when Charles H. reached Advanced Age, the ALJ determined that he was disabled. *Id*. The Appeals Council denied Charles H's request for review on March 7, 2023, permitting the ALJ's decision to serve as the final decision of the Commissioner of Social Security. Record at 2. Charles H. then filed this action.

II.   *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision. *Richardson v. Perales*, *supra*, at 401. A reviewing court must also ensure that the ALJ applied the proper legal standards. *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*, Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). Each case is evaluated by the Commissioner according to a five-step process:

>   (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

Before going from the third to the fourth step, the Commissioner will assess a claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence in the case record. *Id*. The RFC assessment reflects the most an individual can still do, despite any limitations. SSR 96-8p.

The final two steps of the sequential evaluation then follow:

>   (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make the adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

*Id*.

III.   *The ALJ's Decision and the Claimant's Request for Review*

In her decision, the ALJ determined that Charles H. suffered from the severe impairments of degenerative disc disease of the cervical spine, left shoulder rotator cuff tear/osteoarthritis, right shoulder rotator cuff injury, coronary artery disease/hyperlipidemia/hypertension, and obesity. Record at 27. A number of other disorders were found to be non-severe, including abdominal hernia; acute hemorrhoid; bilateral inguinal hernia; gastroenteritis, acute; hyperkalemia; lumbar strain; mild carpal tunnel syndrome, right; sleep apnea; ventral hernia;

bilateral plantar fasciitis; recurrent diverticulitis; calcaneal valgus; gastrocnemius equinus, bilateral; heel spur, bilateral; and suspected tarsal tunnel syndrome, and mental impairments. Record at 28, 30. The ALJ found that no impairment, and no combination of impairments met or equaled a listed impairment. Record at 30-3.

The ALJ found that Charles H. retained the RFC to perform work at the light exertional level with the following limitations:

> [H]e could not climb ladders, ropes, or scaffolds, could perform all other postural maneuvers occasionally, and could perform overhead reaching occasionally and frequently reach in other planes.

Record at 33.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ found that Charles H. was unable to perform his past relevant work. Record at 43. Interestingly, the ALJ noted that prior to November 8, 2021, Charles H. "was Closely Approaching Advanced Age."[1] Record at 43. As a result, the ALJ found that *prior* to November 8, 2021, Charles H. was not disabled and could work in jobs such as information clerk, inspector, and storage-facility rental clerk. Record at 44. The ALJ distinguished that from the time period *after* November 8, 2021, when Charles H.'s age category changed to "Advanced Age,"[2] there were no occupations that Charles H. could perform, and concluded that he was disabled. Record at 29, 43.

---

[1] Under 20 CFR § 404.1563(a), a claimant's chronological age is considered in combination with his residual functional capacity, education, and work experience. In determining the extent to which age affects a person's ability to adjust to other work, advancing age is considered to be an increasingly limiting factor in the person's ability to make such an adjustment. § 404.1563(d) defines "closely approaching advanced age" as a chronological age between 50 and 54.

[2] § 404.1563(e) states that advanced age (age 55 or older) significantly affects a person's ability to adjust to other work. § 404.1568(d)(4) outlines the transferability of skills for persons of advanced age:

> If you are of advanced age (age 55 or older), and you have a severe impairment(s) that limits you to *sedentary* or *light work,* we will find that you cannot make an adjustment to other work unless you have skills that you can transfer to other skilled or semiskilled work (or you have recently completed education which provides for direct entry into skilled work) that you can do despite your impairment(s).

Charles H. now requests review of the ALJ's determination of his ability to work between January 1, 2020 and November 8, 2021. ECF 8 at 1. Charles H. argues that the ALJ erred in failing to find that his podiatric impairments were severe and therefore failed to adequately address their effect on his ability to work. Charles H. also argues that the ALJ erroneously discounted the opinion of the consultative examiner, finding it only partially persuasive. ECF 8 at 9. Finally, Charles H. maintains that the ALJ did not present all of his limitations to the vocational expert in her hypothetical question, resulting in harmful error.

IV.   *Discussion*

   A.  *Podiatric Impairments*

Charles H. argues that the ALJ erred when she failed to find that his bilateral plantar fasciitis, calcaneal valgus, bilateral gastrocnemius equinus, bilateral heel spurs, and bilateral tarsal tunnel syndrome were severe. Record at 28. As discussed by the ALJ, the medical record does not support such a finding. ECF 11 at 2.

Charles H.'s treatment for podiatric conditions was minimal, as he only had two appointments with his podiatrist during the alleged disability period. Record at 474-77. The podiatrist, Dr. Savelloni, did not opine as to the impact of Charles H.'s podiatric afflictions on his ability to stand, walk, or work. *Id*. Dr. Savelloni recommended a number of treatment options to alleviate Charles H.'s symptoms, but there is no evidence that Charles H. followed the recommended treatment plans beyond receiving a cortisone injection. *Id.* There are no podiatry records after March 11, 2021, and it is unclear if the cessation of treatment indicates that Charles H.'s podiatric problems resolved, or if he elected not to pursue further treatment. *Id*.

Dr. Saltzgaber, the consultative examiner, also diagnosed Charles H. with plantar fasciitis. Record at 770. Dr. Saltzgaber opined that Charles H. could only stand for three hours

and walk for four hours of the eight-hour workday, but did not distinguish whether these limitations were caused by the podiatric conditions, or one of Charles H.'s other recorded impairments. Record at 773. Charles H. testified that he often had difficulty standing or walking for extended periods of time, but also reported that he walked and hiked on a vacation during the alleged disability period. Record at 68, 539, 543.

There is no objective evidence or medical opinion in the record that provided the ALJ with an accurate picture of the limiting effects of Charles H.'s podiatric conditions, and nonmedical evidence contradicts Charles H.'s subjective complaints of pain. Thus, I find that substantial evidence supports the ALJ's determination that Charles H.'s podiatric impairments were non-severe.

B. *Persuasiveness of the Consultative Examiner's Opinion*

Charles H. also argues that the ALJ erred in finding Consultative Examiner Dr. Lee Saltzgaber's opinion partially persuasive. When considering medical records, the ALJ must evaluate all medical opinions and their persuasiveness based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." *Ratliffe v. Comm'r of Soc. Sec. Admin.*, No. CV 21-1622, 2022 WL 596302, at *3 (E.D. Pa. Feb. 28, 2022); 20 CFR § 404.1520c(a)-(c). The ALJ must "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.*; § 404.1520c(a). The two most important factors for determining the persuasiveness of medical opinions are consistency and supportability. *Heisey v. Saul*, No. 20-324, 2020 WL 6870738, at *9 (E.D. Pa. Nov. 23, 2020). Here, the ALJ found certain aspects of Dr. Saltzgaber's opinion either unsupported by his examination of Charles H. or inconsistent with the record evidence, and, therefore, concluded the opinion was only partially persuasive. Record at 41.

1. *Consistency*

The ALJ's determination that Dr. Saltzgaber's opinion was inconsistent with other medical records is supported by substantial evidence. "[T]he more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. § 416.920c(c)(2). The ALJ wrote that Dr. Saltzgaber's opinion was "not consistent with the other evidence of record, as the medical evidence…is consistent with far fewer manipulative limitations, and two of the claimant's treating physicians released him to essentially unrestricted light duty around the same time." Record at 40-1.

Dr. Saltzgaber opined that Charles H. could never reach overhead, occasionally reach overhead with his right hand but never with his left hand, occasionally handle, finger, and feel with both hands, never push or pull with his left hand, but could occasionally push and pull with his right hand. Record at 774. Although medical records related to Charles H.'s upper extremities discuss pain in his arms and shoulder as well as a decreased range of motion, none of his doctors included restrictions similar to Dr. Saltzgaber's in their opinions. Record at 450, 453, 467-70. Charles H. reported to his treating physicians that he often felt numbness or pain while playing guitar, but there is no evidence that the doctors recommended he stop playing guitar or doing other manipulative activities. Record at 449, 467. Charles H.'s subjective complaints throughout the alleged disability period included shoulder, arm, and hand pain and numbness. However, he consistently reported playing the guitar despite the pain and numbness, and doing other manipulative activities such as lifting the garbage. Record at 467, 527. He did not report that he has stopped doing certain tasks due to manipulative limitations. There is no record evidence consistent with Dr. Saltzgaber's opinion regarding manipulative limitations.

The ALJ also wrote that two of Charles H.'s treating physicians "released him to essentially unrestricted light duty around the same time." Record at 41. On May 29, 2020, Dr. Ranelle cleared Charles H. for light duty, and noted if his job did not offer light duty, he should remain out of work until he could see a shoulder surgeon. Record at 450. On June 3, 2020, Dr. Bartolozzi treated Charles H. for his shoulder pain, and advised him that it was unlikely that he would be able to return to a job that required excessive heavy lifting and bending. Record at 449. Charles H. argues that these treating physicians did not release him to unrestricted use of the upper extremities, which is indeed true. ECF 8 at 11. Neither doctor recommended that Charles H. could return to full duty work with no restrictions, but their opinions are significantly less restrictive than Dr. Saltzgaber's. Thus, the ALJ's conclusion that Dr. Saltzgaber's opinion was inconsistent with the medical record is supported by substantial evidence.

2. *Supportability*

The ALJ determined that Dr. Saltzgaber's findings during the consultative examination did not support his opinion. Record at 40. I find that the ALJ's decision as to this issue satisfies the substantial evidence standard. "[T]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." 20 C.F.R. § 416.920c(c)(1). The ALJ found that Dr. Saltzgaber's opinion was not well supported by the consultative examination, citing that "on physical examination…[Charles H.] had 5/5 grip strength, intact hand and finger dexterity, and only some reduced strength (4/5) on the left." Record at 40.

As referenced above, Dr. Saltzgaber opined that Charles H. could never reach overhead, occasionally reach overhead with his right hand but never with his left hand, occasionally handle, finger, and feel with both hands, never push or pull with his left hand, but could occasionally do

8

so with his right hand. Record at 774. As the ALJ mentioned, Charles H. had perfect bilateral grip strength, intact hand and finger dexterity, and was able to button, zip and tie without any notes of difficulty at the consultative examination. Record at 770. Dr. Saltzgaber's opinion that Charles H. should be limited to only occasionally handle, finger, and feel with both hands does not reflect Charles H.'s grip strength, hand, and finger dexterity at the examination. Record at 774. Dr. Saltzgaber also observed Charles H.'s right upper extremity's strength as 5/5, but did not note the strength of his left upper extremity. Record at 770. He did note reduced (4/5) elbow flexion and extension and a 4/5 wrist flexion and extension in the left upper extremity. *Id*. Although reduced, Charles H.'s range of motion was not nearly as limited as Dr. Saltzgaber's opinions regarding reaching might suggest. Due to these discrepancies between Dr. Saltzgaber's noted observations and his more restrictive opinion on Charles H.'s manipulative capabilities, the ALJ's determination that his opinion was not well supported by the consultative examination is supported by substantial evidence.

For the reasons discussed above, the ALJ's finding that Dr. Saltzgaber's opinion was only partially persuasive was proper and supported by substantial evidence.

    C.  *Presentation of Limitations in Hypothetical to Vocational Expert*

Charles H. argues that the ALJ erred because the hypothetical question she posed to the vocational expert was incomplete. He contends that the hypothetical failed to include his podiatric limitations and the manipulative limitations from Saltzgaber's opinion. Record at 13.

At step five of the disability analysis, the burden shifts to the Commissioner "to show that other jobs exist in significant numbers in the national economy that the claimant could perform." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205–06 (3d Cir. 2008) (citing *Rutherford v. Barnhart,* 399 F.3d 546, 551 (3d Cir.2005)). "Advisory testimony from a vocational expert is

often sought by the ALJ for that purpose ... and factors to be considered include medical impairments, age, education, work experience and RFC." *Id.* "We do not require an ALJ to submit to the vocational expert every impairment *alleged* by a claimant." *Rutherford,* 399 F.3d. at 5 (emphasis added). Rather, "the hypotheticals posed must 'accurately portray' the claimant's impairments and [ ] the expert must be given an opportunity to evaluate those impairments 'as contained in the record.' " *Id.* (citation omitted).

The ALJ asked the vocational expert to consider an individual of Charles H.'s age, education, and work experience, having the residual functional capacity of light work with added limitations that he cannot climb ladders, ropes, or scaffolds; can occasionally kneel, crouch, or crawl; can occasionally perform all other postural maneuvers; can occasionally engage in overhead reaching; and can frequently reach in other plans. Record at 74-5. The vocational expert testified that the individual would be able to work in occupations such as information clerk, inspector, and storage facility rental clerk. Record at 75. Next, the ALJ added the manipulative limitations suggested by Dr. Saltzgaber in a follow-up hypothetical question involving the same individual, to which the vocational expert replied that there were no jobs available. Record at 75-6.

Regarding the podiatric impairments, the hypothetical accurately portrays Charles H.'s impairments. As discussed above, very little evidence in the record pertains to Charles H.'s podiatric impairments. His two podiatric appointments during the alleged disability period and the diagnosis of plantar fasciitis by Dr. Saltzgaber are the only record evidence of podiatric impairments and do not explain the limiting effects of the podiatric impairments on Charles H.'s ability to stand, walk, or otherwise perform tasks at work. The ALJ is not required to explicitly list every impairment alleged by a claimant in the hypothetical question to the vocational expert;

rather she is required to pose a hypothetical that "reflect[s]" and "adequately convey[s]" each of the limitations. *Walsh v. Colvin*, No. CV 15-2550, 2017 WL 930295 (E.D. Pa. Mar. 9, 2017)(citing *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004)). As Charles H. failed to provide evidence that demonstrated the impact of the podiatric impairments on his ability to work, the ALJ's hypothetical adequately conveyed the podiatric conditions.

Finally, although the ALJ did not rely on the manipulative limitations suggested by Dr. Saltzgaber in formulating her RFC determination, the follow-up hypothetical question directly included the manipulative limitations from Dr. Saltzgaber's opinion. Record at 75-6. Thus, Charles H.'s argument fails on this issue.

The hypothetical accurately portrays Charles H.'s impairments and thus the undersigned finds that the ALJ did not err in posing the hypothetical question to the vocational expert.

V.      *Conclusion*

For the foregoing reasons, I conclude that the Request for Review is denied.

BY THE COURT:

*s/Scott W. Reid*
**SCOTT W. REID**
**U.S. MAGISTRATE JUDGE**